STATE OF LOUISIANA        *        NO. 2024-KA-0700

VERSUS        *        COURT OF APPEAL

BARRY BOWIE        *        FOURTH CIRCUIT

       *        STATE OF LOUISIANA

       *

       *

* * * * * * *

*RLB*

**BELSOME, C. J., CONCURS WITH REASONS**

I join in the overall decision reached by the majority but write separately to concur in the reversal of Mr. Bowie's obstruction conviction and to highlight my concerns with the Court's continued reliance on *State v. Scott*, 23-0022 (La. App. 4 Cir. 8/30/23), 372 So.3d 42, as a near-dispositive framework for obstruction under La. R.S. 14:130.1. While *Scott* aimed to clarify what constitutes obstruction, it has since been applied in a way that shifts the focus from what the State proves to what the defendant fails to do.

Under La. R.S. 14:130.1, obstruction of justice is a specific intent crime that requires: (1) an act of tampering with evidence, including movement; (2) occurring at or near a location the defendant reasonably believes will be investigated; and (3) done with the specific intent to distort the results of a criminal investigation. *See State v. Manuel*, 21-0273, p. 12 (La. App. 4 Cir. 4/6/22), 337 So.3d 967, 973-74. The statute does not require that the offender succeed, only that the intent, which may be inferred from the circumstances, is present. *Id.* at p. 12, 337 So.3d at 974 (citing *State v. Dorsey*, 20-0029, p. 12 (La. App. 4 Cir. 12/9/20), 312 So.3d 652, 660).

The State's evidence showed Mr. Bowie rode a bicycle from his home to the apartment complex shortly before the shooting and later fled while appearing to hold a handgun, which he eventually tucked into his waistband. Surveillance

1

footage placed him near the victim's apartment during the relevant timeframe. Additional footage showed the victim walking to the alcove where his apartment was located, followed by a person in dark clothing just before gunshots rang out. Among the evidence recovered from the scene included six 9mm shell casings, two bullets, and copper fragments. The firearm was never recovered.

"Nothing beyond 'movement' of the evidence is required by the statute **if** accompanied by the requisite intent and knowledge." *State v. Powell*, 15-0218, p. 11 (La. App. 4 Cir. 10/28/15), 179 So.3d 721, 728 (citing *State v. Jones*, 07-1052, p. 11 (La. 6/3/08), 983 So.2d 95, 102) (emphasis added). The State contends a jury could infer specific intent from Mr. Bowie's flight with the weapon. But while flight may reflect consciousness of guilt, it does not necessarily signal a calculated effort to obstruct a police investigation.

Indeed, in most cases, taking the weapon and fleeing reflects an instinct for self-preservation, not interference. That instinct may explain why a defendant runs or even why he takes the gun, but it does not automatically show a desire to impede an investigation. The statute appears to anticipate that perpetrators will flee. What elevates flight to obstruction is additional conduct aimed at concealing or destroying evidence. *See State v. Ramirez-Delgado*, 24-119, p. 10 (La. App. 5 Cir. 12/18/24), -- So.3d --, -- , 2024 WL 5153070 *6 ("more [is required] than merely leaving the scene of a crime with the murder weapon to support an obstruction of justice conviction."). In other words, obstruction is conduct that actively delays or derails investigative efforts. *See Powell, supra* (hiding weapon in a closet); *State v. Alexander*, 23-0540 (La. App. 4 Cir. 4/23/24), 401 So.3d 105 (deleting call log history).

The majority is correct in rejecting the State's assertion that mere flight with a weapon constitutes obstruction. *Id.* at p. 17, 401 So.3d at 115 (rejecting the argument that "any time circumstantial evidence shows that an assailant failed to

2

abandon a weapon used during the commission of an offense at the scene of the crime, adequate proof would exist to support an obstruction of justice conviction."). I agree that this evidence does not rise to the level required to support Mr. Bowie's obstruction conviction.

However, I part company with the majority in its continued reliance on dicta from *Scott*, echoed recently in *State v. White*, 24-0385 (La. App. 4 Cir. 5/14/25), -- So.3d --, --, 2025 WL 1415587, as a framework for obstruction analysis.

As in this case, the defendant in *Scott* fled the scene of a shooting, the gun was never found, and no other obstructive conduct was shown. The State argued that intent could be inferred from the defendant's departure with the gun. *Scott* rejected that premise, and in doing so, offered hypothetical actions that might have supported a finding of obstructive intent including collecting shell casings, deleting surveillance footage, and harming witnesses. The examples were illustrative and meant only to explain the evidentiary gap in that case, not to establish a blueprint for determining obstruction in future cases.

Yet, *Scott* has since evolved into a de facto test for obstruction, substituting the statute's case-specific inquiry with a checklist of omissions. This analysis shifts the inquiry away from what the State actually proved the defendant did toward evaluating what the defendant failed to do that would have been obviously obstructive. But obstruction under La. R.S. 14:130.1 is context-dependent. The majority's approach departs from the statutory framework and risks shifting the evidentiary burden. The question is not whether the defendant's conduct checked hypothetical boxes, but whether his actions shows an intent to distort the results of an investigation. That question cannot be answered by speculating about what more the defendant might have done.

Still, the majority concludes that Mr. Bowie lacked obstructive intent because he did not collect shell casings, destroy surveillance footage, or silence

3

witnesses. In doing so, it trades one flawed standard for another: from presuming obstruction based on flight to denying it based on omission.

Criminal acts often occur in chaotic or emotionally-charged circumstances. A perpetrator may lack the opportunity, means, or awareness to undertake such steps as those posed in *Scott.* Failing to collect casings or erase footage may reflect situational constraints, not necessarily the absence of intent.

The appropriate inquiry remains rooted in what the defendant did, and whether the State's evidence supports a finding that he intended to interfere with an investigation. To do otherwise risks holding post-crime conduct against an unrealistic and overly rigid standard of obstruction. The fact is, most defendants flee to avoid being associated with a crime scene. Presumably, that reflex is grounded in self-preservation, not an intent to obstruct. Absent evidence that the defendant took additional steps to hinder the investigation, an obstruction conviction cannot be sustained. *See Ramirez-Delgado*, 24-119, p. 10, -- So.3d at --, 2024 WL 5153070, at *6. Because the State offered no evidence of obstructive conduct beyond Mr. Bowie's flight with the gun, I agree that the conviction cannot stand.

For these reasons, I concur in the result but caution against entrenching *Scott* as a framework for obstruction under La. R.S. 14:130.1.

4